IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re JOSEPH DULLAS SUMBILLO,<br><br>Debtor.<br>_____<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY,<br><br>Defendant-Appellant,<br><br>vs.<br><br>DANE S. FIELD and LUCIA MALIT SUMBILLO,<br><br>Plaintiffs-Appellees.<br>_____ | CIV. NO. 15-00125 JMS-BMK (Bankr. No. 11-01915, Adv. No. 14-90052)<br><br>ORDER AFFIRMING BANKRUPTCY COURT'S DENIAL OF DEFENDANT-APPELLANT DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION TO DISMISS |

**ORDER AFFIRMING BANKRUPTCY COURT'S DENIAL OF DEFENDANT-APPELLANT DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION TO DISMISS**

## I. **INTRODUCTION**

This is an interlocutory appeal under 28 U.S.C. § 158(a)(3) of a

March 30, 2015 Order of the U.S. Bankruptcy Court for the District of Hawaii

("Bankruptcy Court") that denied Deutsche Bank National Trust Company's

("Deutsche Bank") Motion to Dismiss claims brought by Bankruptcy Trustee

Dane S. Field and Lucia Malit Sumbillo (collectively "Field") in an adversary

proceeding pending in Bankruptcy Court.  Based on the following, the Bankruptcy

Court's March 30, 2015 Order is AFFIRMED.

## II.  BACKGROUND

This appeal presents a question of law regarding the four-year statute

of limitation set forth in Hawaii Revised Statutes ("HRS") § 480-24(a), which

provides:

> Any action to enforce a cause of action arising under this
> chapter shall be barred unless commenced within four
> years *after the cause of action accrues*, except as
> otherwise provided in subsection (b) and section 480-22.
> For the purpose of this section, a cause of action for a
> continuing violation is deemed to accrue at any time
> during the period of the violation.

(Emphasis added).  In particular, the issue concerns the date that Field's claims

under HRS Chapter 480 for unfair or deceptive acts or practices ("UDAP")

"accrued."  Because the appeal turns on legal questions, the court only summarizes

the factual allegations of the underlying adversary Complaint (which the court

assumes as true for purposes of Deutsche Bank's Motion to Dismiss) as necessary

to establish the context for the legal question.[1]

---

[1]  The court does not, for example, analyze all the factual allegations of the thirty-two
page First Amended Complaint to ascertain whether any specific alleged violation might be time-
barred, even under the legal framework discussed in this Order.  For purposes of this appeal, it is
enough that some or most of the claims are not barred.  Neither the Bankruptcy Court nor the
parties performed such a detailed review of the facts, and such a fact-based analysis would be

(continued...)

A.     **Factual Background**

As alleged in the First Amended Complaint ("FAC"), on or about August 9, 2006, Debtor Joseph Dullas Sumbillo ("Debtor") executed a $348,000 promissory note, secured by real property located in Wahiawa, Hawaii (the "subject property"), in favor of MortgageIt, Inc., as Lender.  Doc. No. 3 (Bankr. Ct. Adv. No. 14-90052), FAC ¶ 16.  A corresponding August 2006 mortgage (with Debtor and Plaintiff-Appellee Lucia Malit Sumbillo as mortgagors) incorporated a "power of sale" clause allowing the mortgagee to use the non-judicial foreclosure procedures in the former HRS § 667-5 (repealed in 2012) in the event of default. *Id*. ¶¶ 17-19, 28.  In April 2010, the mortgage was assigned to Deutsche Bank, which invoked the mortgage's power of sale clause, and commenced non-judicial foreclosure proceedings after Debtor defaulted.  *Id.* ¶ 19.

On April 21, 2010 Deutsche Bank recorded a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" (the "April 21, 2010 Notice"), which was published in the Honolulu Star Advertiser on May 4, 11, and 18, 2010.  *Id*. ¶¶ 20, 22.  The April 21, 2010 Notice stated that Deutsche Bank "will hold a sale" of the subject property at noon on June 24, 2010 at the front entrance of the First

---

[1](...continued)
well beyond the scope of this interlocutory appeal.

Circuit Court of the State of Hawaii. *Id.* ¶ 21. It also listed eight terms of sale, and referenced additional terms on a website. *Id.* ¶¶ 40, 42. The auction was not held on June 24, 2010, but was postponed to August 26, 2010, and was held at a different location off court property (and such changes were not advertised in any public notice). *Id.* ¶¶ 34-37. At the August 26, 2010 auction, Deutsche Bank obtained the subject property for a credit bid of $303,138.63, which was less than the assessed value of $399,000.00. *Id.* ¶¶ 57-58. After Deutsche Bank recorded a quitclaim deed on October 8, 2010 (deeding the subject property to itself), the subject property was sold for $390,000, with closing on February 1, 2011. *Id.* ¶¶ 55, 60-61.

## B.    Procedural Background

As part of Debtor's chapter 7 bankruptcy proceedings, Field commenced an adversary proceeding against Deutsche Bank on August 25, 2014. Doc. No. 1 (Bankr. Ct. Adv. No. 14-90052), and filed the FAC the next day. The FAC alleges violations of HRS § 480-2(a),[2] claiming three categories of UDAPs: (1) "Unfair and Deceptive Statements About 'Date' and the Change in Date," *id.* at 11, (2) "Unfair and Deceptive Statements About 'Location' and the Change in

---

[2] Section 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

Location," *id*. at 15, and (3) "Other Unfair and Deceptive Aspects of the Notice of

Sale." *Id*. at 17.[3]  Field alleges that the terms of the April 21, 2010 Notice

contained several false and misleading statements about, for example, (1) the type

of conveyance the high bidder would receive (*i.e*., a quitclaim as opposed to a

limited warranty deed); (2) the deadline to close the sale (stating that successful

bidders must close their sales within thirty days, when they "virtually always"

were permitted to close in a longer period); and (3) the liquidated damages

provision, which stated that Deutsche Bank would retain a bidder's ten percent

deposit, when such a provision was "rarely, if ever, enforced against a third-party

bidder and was in any event unenforceable." *Id*. ¶¶ 48-50.  These allegedly false

and misleading statements "had the effect of discouraging bidders." *Id*. ¶¶ 50-51.

The alleged UDAPs violated Deutsche Bank's duty to obtain the best

possible price for the benefit of the Sumbillos, and enabled Deutsche Bank to

obtain the subject property for a credit bid much less than the tax-assessed value

of the subject property. *Id*. ¶¶ 47, 54, 57, 58.  The FAC describes Field's injury, in

---

[3]  In his Answering Brief, Field notes that, regardless of the disposition of this appeal, its "common-law claim for wrongful foreclosure is subject to a six-year statute of limitation and is not time barred," Doc. No. 11, Answering Br. at 1 n.1, and contends that "Deutsche never moved to dismiss that common-law claim below." *Id*.  The Bankruptcy Court's Order, however, did not address a common-law wrongful foreclosure claim, and it is not clear that the FAC actually alleges such a claim, or whether it could be construed as such.  But, because the court ultimately affirms the Bankruptcy Court's denial of Deutsche Bank's Motion to Dismiss, the court need not reach this question.

part, as follows:

> 14. . . . Deutsche foreclosed on the Sumbillos' property without satisfying the conditions precedent to exercise its claimed right to foreclosure. . . . [T]he Sumbillos were wrongfully deprived of the title, possession, and use of their real property and are entitled to damages therefor.
> . . . .
> 62.  As a proximate result of the wrongful, unfair and/or deceptive practices of Deutsche, the Sumbillos lost possession of, title to and use of and occupancy of their real property and home, including personal property therein.
>
> 63.  As a direct and proximate result of the wrongful acts described above, the Sumbillos lost substantial equity in their property, and lost the use and rental value of their property from and after the date they lost possession, all in amounts to be proved at trial.

*Id.* ¶¶ 14, 62, 63.

On December 18, 2014, Deutsche Bank filed a Motion to Dismiss in the Bankruptcy Court, arguing that this action is barred by the four-year statute of limitation in HRS § 480-24(a).  It invoked the "occurrence rule," which it contends has been applied by Judges in this District Court for the past thirty-five years in determining when a cause of action accrues under Chapter 480.  *See, e.g.*, Doc. No. 10, Opening Br. at 9.  The "occurrence rule" states generally that the four-year period in § 480-24(a) "begins to run from the date of the occurrence of

6

the violation, as opposed to the discovery of the alleged violation." *Rundgren v. Bank of N.Y. Mellon*, 2010 WL 4066878, at *6 (D. Haw. Oct. 14, 2010) (citing *McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1289 (D. Haw. 2007)).

Deutsche Bank argued that the "violations" for Field's § 480-2 claims "occurred" on April 21, 2010 -- the date that the allegedly unfair and/or deceptive "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" was published. Because the action was not filed until August 25, 2014, Deutsche Bank argued that the action was time-barred.

The Bankruptcy Court denied Deutsche Bank's Motion. Doc. No. 2-3.[4] Its March 19, 2015 oral ruling reasoned that there was no "occurrence" until a UDAP claim under § 480-2(a) was actionable, and that requires an "injury." Doc. No. 2-7, Tr. (Mar. 19, 2015) at 15. The Bankruptcy Court explained that for Field's claims based on the April 21, 2010 notice, there could be no "injury" until (at the earliest) the foreclosure auction was actually held. *Id.* Because the auction was held on August 26, 2010, the action was timely -- having been filed on August 25, 2014, within the four-year limitation period. The Bankruptcy Court also concluded that a "continuing violation" theory applied, reasoning that "[t]his is an

_____

[4] The March 30, 2015 written Order memorialized a March 19, 2015 oral ruling, with the oral ruling explaining the Bankruptcy Court's reasoning.

occurrence that took place over a period of a couple of months.  There was a notice, and a sale, and the fact that they weren't compressed [at] the same instant, doesn't mean that there were two occurrence[s]."  *Id.* at 16.

On April 14, 2015, Deutsche Bank filed a Motion for Leave to Appeal under 28 U.S.C. § 158(a)(3), Doc. No. 2-1, which this court granted on May 5, 2015.  Doc. No. 7.  Deutsche Bank filed its Opening Brief on June 15, 2015.  Doc. No. 10.  Field filed an Answering Brief on June 29, 2015, Doc. No. 11, and Deutsche Bank filed a Reply on July 6, 2015.  Doc. No. 12.  Oral argument was held on July 20, 2015.  After the hearing, Deutsche Bank filed a Supplemental Memorandum on July 31, 2015, Doc. No. 16, and Field filed a Supplemental Memorandum in Reply on August 11, 2015.  Doc. No. 17.

## III. <u>DISCUSSION</u>

Despite some posturing in their briefs, the parties now *agree* that the "occurrence rule" applies -- the remaining question is how it applies.  That is, a cause of action under Chapter 480 accrues for purposes of § 480-24(a), and the four-year period begins to run, "from the date of the occurrence of the violation, as opposed to the discovery of the alleged violation."  *Rundgren*, 2010 WL 4066878,

at *6 (citing *McDevitt*, 522 F. Supp. 2d at 1289).[5]  The harder question, however, is determining when a "violation" actually "occurs," and this often depends on specific facts.  *See Lizza v. Deutsche Bank Nat'l Trust Co.*, 1 F. Supp. 3d 1106, 1121-22 (D. Haw. 2014) ("[T]he appropriate date for the accrual of a UDAP claim depends on the specific UDAP alleged.").

The court concludes (consistent with the Bankruptcy Court's Order) that a "violation" does not "occur" until all the elements of a claim have occurred -- and this includes "injury" and "damages."[6]  Most, if not all, of the FAC's claims based on the April 21, 2010 Notice could not have been actionable until the alleged § 480-2 violations caused injury and damages to the Sumbillos (and thus

---

[5]  The Hawaii Intermediate Court of Appeals recently applied the occurrence rule to § 480-24(a), albeit in an unpublished disposition.  *See Reyes v. HSBC Bank USA, N.A.*, 2015 WL 3476371, at *5 (Haw. App. May 29, 2015).  And decisions from this District have also repeatedly applied the occurrence rule under § 480-24(a).  *See, e.g.*, *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1099-1100 (D. Haw. 2011), *abrogated on other grounds by*, *Compton v. Countrywide Fin. Corp.*, 761 F.3d 1046 (9th Cir. 2014); *Au v. Republic State Mortg. Co.*, 2013 WL 1339738, at *13 (D. Haw. Mar. 29, 2013); *Cablay v. Bank of Am., N.A.*, 2013 WL 1789770, at *7 (D. Haw. Apr. 26, 2013); *Hoilien v. OneWest Bank, FSB*, 2012 WL 1379318, at *8 (D. Haw. Apr. 20, 2012); *Wallace v. BAC Home Loans Servicing, LP*, 2011 WL 675354, at *7 (D. Haw. Feb. 16, 2011); *Franco v. Fed. Nat'l Mortg. Ass'n*, 2011 WL 1842970, at *5 (D. Haw. May 13, 2011); *Martin v. GMAC Mortg. Corp.*, 2011 WL 6002617, at *10 (D. Haw. Nov. 30, 2011); *Hoilien v. Bank of Am.*, 2011 WL 3494523, at *8 (D. Haw. Aug. 10, 2011)); *Uy v. HSBC Bank USA, N.A.*, 2015 WL 1966689, at *7 (D. Haw. Apr. 30, 2015).

[6]  This court applies the same standard of review applied by an appellate court when reviewing a bankruptcy appeal.  *See In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010).  "The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo."  *In re Kimura*, 969 F.2d 806, 810 (9th Cir. 1992).

to Field, in his capacity as Bankruptcy Trustee).  And -- contrary to Deutsche

Bank's argument that the injury and damages both occurred when the notice was

published -- the Sumbillos could not have been injured or damaged at least until

the date of the auction on August 26, 2010.

In this regard, although the FAC alleges a variety of § 480-2(a)

violations, Field's claims are actually brought under HRS § 480-13(b), which

provides a "consumer" a private remedy for such violations.  Section 480-13(b)

provides in pertinent part:

> Any consumer who is injured by any unfair or deceptive
> act or practice forbidden or declared unlawful by section
> 480-2:
>
> (1) May sue for damages sustained by the consumer, and,
> if the judgment is for the plaintiff, the plaintiff shall be
> awarded a sum not less than $1,000 or threefold damages
> by the plaintiff sustained, whichever sum is the greater,
> and reasonable attorney's fees together with the costs of
> suit[.]

"To obtain relief under section 480-13(b)(1), a consumer must

establish three elements: '(1) a violation of [§] 480-2; (2) injury to the consumer

caused by such a violation; *and* (3) proof of the amount of damages.'"

*Compton v. Countrywide Fin. Corp*., 761 F.3d 1046, 1053 (9th Cir. 2014) (quoting

*Davis v. Wholesale Motors, Inc*., 86 Haw. 405, 417, 949 P.2d 1026 (Haw. App.

1997) (other quotation omitted) (emphasis added); *see also Gurrobat v. HTH Corp.*, 133 Haw. 1, 21, 323 P.3d 792, 812 (2014) (reiterating elements of a § 480-13 claim as "(1) a violation of HRS Chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages") (citation omitted).  That is, a plaintiff must have "suffered an *injury resulting in damages*." *Compton*, 761 F.3d at 1056 (citing § 480-13(b)(1), and *Zanakis-Pico v. Cutter Dodge, Inc*., 98 Haw. 309, 316, 47 P.3d 1222, 1239 (2002)) (emphasis added).  An injury must be "fairly traceable to the defendant's actions."  *Flores v. Rawlings Co.*, 117 Haw. 153, 167 n.23, 177 P.3d 341, 355 n.23 (2008) (internal citation omitted).

   Deutsche Bank argues that "actual damages are not a prerequisite to a UDAP damages claim because the statutory damages remedy ['a sum not less than $1,000'] exists as soon as there has been a UDAP and injury."  Doc. No. 16, Deutsche Bank Supplemental Mem. at 3.  But this argument is contrary to Hawaii law.  For example, *Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Co.*, 91 Haw. 224, 982 P.2d 853 (1999), *superseded by statute on other grounds as stated in Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 435, 228 P.3d 303, 315 (2010), explained:

   It has been argued that section 480-13(a) is an automatic

damages provision.  The plain language of HRS § 480-13(a), however, requires some evidence of damage. Indeed, '[w]hile proof of a violation of chapter 480 is an essential element of an action under HRS § 480-13, *the mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause [some] private damage.*'"

*Id.* at 254 n.30, 982 P.2d at 883 n.30 (quoting *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 618, 620-21, 607 P.2d 1304, 1312-13 (1980)) (other citations omitted) (emphasis added).[7]

Indeed, in interpreting the same Hawaii statute at issue here (the former HRS § 667-5), *In re Kakauoha-Alisa*, 674 F.3d 1083, 1092 (9th Cir. 2012), observed that "[the] conclusion that Lenders' improper postponement [of the auction] amounted to a deceptive practice [under § 480-2] does not automatically entitle Debtor to monetary damages").  Instead, *In re Kakauoha-Alisa* reiterated that "consumers are entitled to damages for a violation of HRS § 480-2 only if they show that those acts cause private damage."  *Id.* (citations and internal quotation marks omitted).  *See also Zanakis-Pico*, 98 Haw. at 317, 47 P.3d at 1230

---

[7] Although *Robert's Hawaii* concerned unfair methods of competition under HRS § 480-13(a)(1) (rather than a UDAP claim under HRS § 480-13(b)(1)), the language in the two sections is nearly identical in relevant respects, and is construed similarly.  *See, e.g.*, *Flores v. Rawlings Co.*, 117 Haw. 153, 167 n.24, 177 P.3d 341, 355 n.24 (2008) ("Although a different provision, both provisions require an 'injury,' and applying the concept of *in pari materia*, the meaning of injury as interpreted by the court in [*Ai v. Frank Huff Agency*, 61 Haw. 607, 607 P.2d 1304 (1980),] may be of assistance when interpreting HRS § 480-13(b).").

12

("[T]he $1,000.00 assured minimum recovery [in § 480-13] was intended to be available to all consumers who could demonstrate damages."); *Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234, 1244-45 (D. Haw. 2002) (denying statutory damages under § 480-13, where plaintiff did not suffer actual damages resulting from a § 480-2 violation).

In other words, a viable § 480-13(b)(1) claim must allege non-speculative damages that are "fairly traceable" to the violation. *See, e.g.*, *In re Kakauoha-Alisa*, 674 F.3d at 1093. Furthermore, *Robert's Hawaii* emphasized that "injury" and "damages" are "two distinct elements of HRS § 480-13." *Robert's Hawaii*, 91 Haw. at 254 n.31, 982 P.2d at 883 n.31.

This well-settled interpretation is consistent with analogous federal law, which is persuasive in analyzing provisions of Chapter 480. *See* HRS § 480-3 ("This chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes, except that lawsuits by indirect purchasers may be brought as provided in this chapter."). In particular, recent Ninth Circuit law explains that:

> the limitations period [in 15 U.S.C. § 15b] may start to run after the defendant's initial violation of the antitrust law, if it is "uncertain" or "speculative" whether the defendants' antitrust violation has injured the plaintiff at the time of the violation. *AMF, Inc. v. General Motors*

> *Corp. (In re Multidistrict Vehicle Air Pollution)*, 591
> F.2d 68, 72 (9th Cir. 1979) (citing *Zenith* [*Radio Corp. v.
> Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971)]); *see
> also Samsung* [*Elecs. Co. v. Panasonic Corp.*, 747 F.3d
> 1199, 1204-05 (9th Cir. 2014)]. *In such cases, the
> statute of limitations period begins on the date that the
> plaintiff's damages first "accrued and became
> ascertainable." AMF*, 591 F.2d at 73.

*Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) (emphasis added).

And, contrary to Deutsche Bank's arguments, this result is consistent

with decisions from this District that have applied the occurrence rule to time-bar

Chapter 480 claims in a mortgage foreclosure context that arose out of loan

origination (such as being wrongfully induced to enter into a refinancing

transaction, *see, e.g.*, *Teaupa*, 836 F. Supp. 2d at 1088, 1099, or by changing a

loan's terms at closing, *see, e.g.*, *Au v. Republic State Mortg. Co.*, 2013 WL

1339738, at *13 (D. Haw. Mar. 29, 2013)). In such cases, a borrower is injured

and damaged in a non-speculative manner when the borrower becomes

contractually bound to the terms of the loan that was obtained by unfair or

deceptive means. *See, e.g.*, *Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125,

1129, 1139 (D. Haw. 2011) (reasoning that a § 480-2 claim "accrued" on the date

the loan transaction was consummated and was thus time-barred under § 480-

24(a)); *Au*, 2013 WL 1339798, at *13 ("Plaintiff . . . testified that he expected to

14

get a 'loan modification' with a 7.5% initial rate within the month after closing [in

February 2007]. . . .  That is, Plaintiff knew in February 2007 that he had not

gotten the terms that [were] allegedly promised him[.]").

       Here, the Sumbillos could not have suffered injury and ascertainable

damages until, at minimum, the auction occurred -- that is, until the consequences

of the defective April 21, 2010 Notice caused them actual harm (*i.e.*, private

damages).  And this did not occur until the point when Deutsche Bank obtained

the subject property for a credit bid ($303,138.63) that was allegedly substantially

less than the tax-assessed value.  Until then, they were not injured and damages

were speculative.  Even assuming that the terms of the April 21, 2010 Notice were

unfair or deceptive, prior to the auction date, Deutsche Bank might have issued a

new notice that was not a violation (with no ascertainable injury or damages to the

Sumbillos).  *See Saiki v. LaSalle Bank Nat'l Ass'n*, 2011 WL 601139, at *4 (D.

Haw. Feb. 10, 2011) ("Cal-Western rendered the Notice of Foreclosure void by

rescinding it. . . .  Further, although Cal-Western appears to admit it did not

comply with the requirements of § 667-5, Plaintiff cannot seek equitable relief

because the Notice of Foreclosure is void, and Plaintiff is not otherwise entitled to

damages for this defect.") (citations omitted).  Indeed, a high bidder might have

appeared at the actual auction and offered $400,000 or more.  In the language of

15

*Robert's Hawaii*, "the mere existence of a violation [on April 21, 2010] is not sufficient ipso facto to support [a claim]; forbidden acts cannot be relevant unless they cause some private damage."  91 Haw. at 254 n.30, 982 P.2d at 883 n.30 (square brackets omitted).  That is, this injury alleged in the FAC (¶¶ 14, 62-63) did not occur until the foreclosure (at a below-market price) actually took place. *See Nottage v. Bank of N.Y. Mellon*, 2012 WL 5305506, at *9 (D. Haw. Oct. 25, 2012) ("BONY's foreclosure of Plaintiffs' home -- if wrongful -- would cause damages to Plaintiffs [under § 480-13.]").  And this did not occur until the August 6, 2010 auction (at the earliest).[8]

In short, the Bankruptcy Court properly concluded that, based on the allegations of the FAC, the statute of limitation in § 480-24(a) has not expired. The action was timely filed.[9]

///

///

///

_____

[8]  To be clear, this Order does not address the requirements for a claim seeking only injunctive relief under HRS § 480-13(b)(2).  For example, whether or not the Sumbillos might have been able to file an action seeking only to halt an auction based on any defects in the April 21, 2010 Notice has no bearing on Field's claims for damages here.

[9]  Given this conclusion, the court does not determine whether the continuing violation doctrine might also apply.

16

## IV.  <u>CONCLUSION</u>

Because the action was timely filed, the court AFFIRMS the

Bankruptcy Court's May 30, 2010 Order Denying Deutsche Bank's Motion to

Dismiss.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 31, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Deutsche Bank Nat'l Trust Co. v. Field (In re Sumbillo)*, Civ. No. 15-00125 JMS-BMK, Order
Affirming Bankruptcy Court's Denial of Defendant-Appellant Deutsche Bank National Trust
Company's Motion to Dismiss